### James Clayton v. School District No. 1.

1. PLEADINGS; *Motion to Strike Out; Issue.* Where a defendant in an action in the nature of ejectment amends his answer during the trial, by inserting matter therein which he could prove under his general denial which he had previously filed, the court does not err, by refusing to strike out such matter, on the ground, as set forth in the plaintiff's motion, that such matter "changes substantially the defense."

2. EJECTMENT; *Defense; Proof Admissible Under General Denial.* A defendant may, in such an action, for the purpose of defeating the plaintiff's title, show, under a general denial, a paramount title in himself, provided such title carries with it the right of possession, whether such title is legal, or equitable, and whether the plaintiff's title is legal, or equitable.

3. ——— *New Trial, in Ejectment, for Cause Shown.* A motion for a second "new trial" in ejectment, is governed by the same rules which govern applications for new trials in other actions; and therefore, a motion for such second new trial should be made "upon *written* grounds *filed* at the time of making the motion."

4. ———— *Evidence; Relevancy and Competency; Equitable Title.* In proving an equitable title to real property, facts, which in and of themselves would not be relevant or competent, may nevertheless sometimes be proved, where they, with the other facts in the case, make out such equitable title; and taking all the proven facts in this case together, they amply make out a paramount equitable title to the property in controversy in the defendant.

### *Error from Barton District Court.*

EJECTMENT, brought by *Clayton,* against *School District No. 1 of Barton County.* Second trial at March Term 1877 of the district court. Findings and judgment for defendant. New trial refused, and *Clayton* brings the record here for review.

*Clayton & Clayton,* for plaintiff.

The opinion of the court was delivered by

VALENTINE, J.: This was an action in the nature of ejectment, brought by James Clayton against School District No. 1 of Barton county, for the recovery of lot No. 9 in block No. 89 in the city of Great Bend. The plaintiff in his amended petition alleged that he was the owner in fee simple of said lot, that he was entitled to the possession thereof, and that the defendant unlawfully kept him out of the possession. The defendant in its answer denied that the plaintiff was the owner of said property, as alleged in the plaintiff's petition. Upon this petition and answer a trial was had; judgment was rendered for the plaintiff; and afterward a new trial was granted under section 599 of the code. A second trial was afterward had; and at this second trial the proceedings occurred, of which the plaintiff below, as plaintiff in error, now complains.

Statement of the case.

The second trial was had before the court without a jury, and was commenced on the above-named pleadings. The plaintiff introduced the following evidence, to-wit: a patent from the United States, conveying to A. A. Hurd, mayor of the city of Great Bend, the town-site of Great Bend, in trust

for the occupants thereof, dated 18th December 1872; a report of three commissioners appointed by said mayor awarding said lot No. 9, among other lots in said town-site, to the Great Bend town company, dated 2d February 1874; a deed from said Mayor Hurd, conveying to the Great Bend town company said lot, among others, dated 25th March 1874; a deed from John T. Morton, president of the Great Bend town company, conveying said lot to the plaintiff, James Clayton, for the expressed consideration of one dollar, and dated 5th November 1875. The plaintiff then rested. The defendant then with leave of the court filed a new and amended answer. This amended answer contained two counts. The first denied specially the plaintiff's title and right of possession, and also denied generally all the allegations of the plaintiff's petition. The second count set forth facts entitling the defendant to affirmative equitable relief. But it can hardly be said that the answer prayed for any kind of affirmative relief. "The plaintiff then moved [the court] to strike out all of said answer except the general and special denials of title, for the reason that said amendments changed substantially the defense." The court overruled said motion, and the plaintiff excepted, and now assigns such ruling for error. This is the first ruling of the court below of which the plaintiff now complains. After said motion was overruled, the plaintiff replied to the defendant's amended answer, denying generally all the allegations therein contained. The trial then proceeded. The defendant introduced evidence tending to show that in the fall of 1872, J. L. Curtis, the then president of the Great Bend town company, by parol, and by a letter, donated said lot, along with other lots, to said school district; that said school district immediately took possession of said lot, and in 1872 commenced to build a school-house thereon, which it completed in 1873; that the school district has ever since been in the actual possession of said lot, and that both the Great Bend town company and the plaintiff had full and continuous knowledge of all of the defendant's equities in and to said lot. The plaintiff objected generally to all of this evi-

dence, and objected specially to portions thereof; and at the close of the trial moved to strike it all out.    After the defendant introduced the foregoing evidence, the plaintiff introduced rebutting evidence, and the defendant then introduced surrebutting evidence.    The court upon all the evidence introduced found in favor of the defendant, and rendered judgment accordingly, but did not render any judgment granting to the defendant any affirmative relief.    The only judgment rendered in favor of the defendant was as follows: "It is therefore considered that the said School District No. 1 of Barton county, go hence without day, and recover of the said plaintiff its costs in and about its suit in this behalf expended, taxed at $———." The plaintiff excepted to this judgment. "The plaintiff then made an oral motion for a new trial, for the reasons, *first,* for errors of law occurring at the trial and excepted to by the plaintiff; *second,* that the judgment was contrary to law; *third,* that the judgment was contrary to the evidence; *fourth,* that the judgment was contrary both to law and the evidence."    Said motion was overruled, and the plaintiff excepted.

We cannot say from the foregoing facts that the court below committed any material error.

I. The motion of the plaintiff to strike out a portion of the defendant's amended answer was evidently aimed at the second count.    Now said count might properly have been stricken out for immateriality, but it could not properly have

2. Ejectment; defense; proof under general denial.

been stricken out because it "changed substantially the defense."    It did not "change substantially the defense."    Anything that could have been proved under it might have been proved under the general denial pleaded in the first defense.    Everything that was in fact proved on the trial might have been proved under said general denial.    And no relief was granted that could not have been granted under said general denial.    In this state a defendant may, for the purpose of defeating the plaintiff's action in ejectment, show, under a general denial, a paramount title in himself, provided this title carries with it

the right of possession, whether his title to the property in question is legal, or equitable, and whether the plaintiff's title to such property is legal, or equitable. (*Hall's Heirs v. Dodge*, 18 Kas. 277; *Wicks v. Smith*, 18 Kas. 508.) Under the statute the plaintiff must "state in his petition that he has a legal or equitable estate" in the property in controversy, and that he "is entitled to the possession thereof," "and that the defendant unlawfully keeps him out of the possession" thereof. (Gen. Stat. 747, § 595.) The statute also provides, that "it shall be sufficient, in such action, if the defendant, in his answer, deny generally the title alleged in the petition, or that he withholds the possession, as the case may be; but if he deny the title of the plaintiff, possession by the defendant shall be taken as admitted." (Gen. Stat. 748, § 596.) Under this statute, it will be seen that the defendant has a choice between two kinds of denial: 1st, he may deny generally the plaintiff's title ; or, 2d, he may deny specially that he, the defendant, withholds the possession of the property. By the former, he evidently denies all the material allegations of the plaintiff's petition, except that he is in the possession of the property, and that he withholds the same from the plaintiff. By the latter, he virtually does nothing more than to enter a disclaimer to the property. By the former, he denies, (1st,) that the plaintiff has any such "legal or equitable estate" in the property in controversy as the plaintiff has set forth in his petition; (2d,) he denies that the plaintiff "is entitled to the possession" of the property; (3d,) and he denies "that the defendant *unlawfully* keeps him [the plaintiff] out of the possession" of the same. And, although the defendant, by this plea of general denial of title, admits that he, himself, is in the actual possession of the property, that he keeps the plaintiff out of the possession of the same, and withholds the same from the plaintiff, yet he does not admit that his possession is either wrongful or unlawful. And neither does he admit that the plaintiff has any right thereto. Hence, under an ordinary petition in this kind of action, and a general denial of the plaintiff's

title, the plaintiff must prove, first, that he has the *estate* in the property which he alleges he has; second, that he is entitled to the immediate *possession* of the property, and third, that the possession of the property by the defendant is *unlawful;* and if he should fail in any one of these three particulars, he would necessarily fail in the action. Although the plaintiff might hold the legal title to the property in controversy, yet, if it were shown that the defendant held the paramount equitable title thereto giving to the defendant the right to the possession thereof, the plaintiff would necessarily fail in the action. The plaintiff's cause of action is more immediately founded upon an infringement of his own right to the possession of the property than upon anything else. Of course, title in the plaintiff, is material in the action; but it is material only as being the basis of the plaintiff's right of possession. The cause of action really consists in an infringement of a right of possession founded upon an estate legal or equitable. Hence it devolves upon the plaintiff, not only to show that he has an "estate" in the property in controversy, but it also devolves upon him to show that he has a right to the immediate possession thereof, and that the defendant has violated that right by unlawfully withholding the possession from him. This action is peculiar. There is no other action like it. The action of replevin for the recovery of personal property, comes nearest being like it. But even that action is not like it in all particulars. The plaintiff's petition in this kind of action is short, being couched in the most general terms. It merely alleges the plaintiff's estate, legal or equitable, his right of possession, and the defendant's wrongful possession. The statutes provide in terms, that "it shall not be necessary to state how the plaintiff's estate or ownership is derived." (Gen. Stat. 748, § 595;) and all that is necessary for the defendant to do is, to "deny generally the title alleged in the petition." Upon these pleadings, which would not together require a single page of legal cap upon which to write them, the parties may show anything that would tend to prove or disprove the

plaintiff's cause of action.   Upon these pleadings the defendant may always show that he has an equitable title to the property in question, provided always that such equitable title is paramount to the plaintiff's title, and provided further, that it gives to the defendant the right to the possession of the property; for, in all such cases, such evidence would tend to disprove the allegations necessarily contained in the plaintiff's petition that the plaintiff "is entitled to the possession" of such property, "and that the defendant unlawfully keeps him out of the possession."

II.  The plaintiff alleges error in the admission of evidence. Now it has already been held in this court, that "in a case tried before a jury, a motion for a new trial must be *filed* within three days from the incoming of the verdict, unless good reason be shown for the delay, or errors alleged in the progress of the trial in the admission of evidence, etc., will be deemed to have been waived." (*Fowler v. Young*, 19 Kas. 150.)   We suppose the same rule will apply where the case is tried by the court without a jury.   And the statute provides that "the application [for a new trial] must be by motion upon *written* grounds, *filed* at the time of making the motion." (Gen. Stat. 688, § 309.)   No "motion upon *written* grounds," asking for a new trial, was ever "*filed*" in this case.   It must be remembered that one new trial had already been granted in this case, and that the questions we are now considering arise upon a motion for a second new trial; and that motions for a second new trial in actions of ejectment are governed by the same rules which govern applications for new trials in other actions. (Gen. Stat. 748, § 600.)   But passing over this question, we do not think that the court below erred in the admission of evidence.   The defendant had a right to prove its equitable defense under its general denial.   And in doing so, and as a part of the proof of such equitable defense, it had a right to prove that J. L. Curtis was president of said town company, and that he donated by parol said town lot to the defendant.   These two facts taken alone would not constitute

3. New trial, for
cause shown,
in ejectment.

any defense to the plaintiff's action; but taken in connection
with the other facts, they would.    We shall discuss the suffi-
ciency of the facts hereafter.

III. ·The material facts of this case, so far as it is necessary
to state them, are substantially as follows: On 18th December
1872, the lot in controversy was a part of the town-site of
the city of Great Bend, and was at that time in the possession
4. Equitable          and occupancy of defendant school district, which
title; evidence.     was then building a school-house thereon.    The
title to said lot was then in the United States.    But on that
day the United States issued a patent conveying said town-
site to A. A. Hurd, mayor of Great Bend, in trust for the
several occupants of said ·town-site.    The defendant was at
that time and has been ever since an occupant of said lot.
The evidence does not show that any person or corporation
except the defendant ever occupied said lot, and probably no·
person or corporation except the defendant ever did so occupy
the same.    The lot was probably vacant and unoccupied
when the defendant took possession thereof and commenced
to build its said school-house thereon, and probably had
always been so vacant and unoccupied up to that time.    The
defendant however took the possession of said lot as a dona-
tion from the Great Bend town.company, made by its then
president, J. L. Curtis.    Probably however the town com-
pany had nothing at that time to donate.    Certainly it had
nothing like a legal title to said.lot.    And if it had anything
like an equitable title, the plaintiff has failed to show it..
There is nothing in the case that shows that the town com-
pany was ever an occupant of said lot, or that it had any in-
terest in the lot under any person who was an occupant.    But
suppose, for the purposes of the case, that the town company
had at the time that Curtis made said donation some equita-
ble interest in said lot; still we think the same result must
follow.    Curtis, for the town company, donated such sup-
posed equitable interest to the defendant.    But the plaintiff
claims that Curtis, as president of said town company, had
no power to make such donation.    And yet the plaintiff's

whole title is founded upon a deed executed by *another president* of said town company for the *nominal consideration of* "*one dollar.*" Probably both presidents had the power which they assumed to exercise. But taking said donation by president Curtis, with the subsequent acquiescence and consequent ratification of the town company during the time that the defendant was building its said school-house, and altogether we think that they would be sufficient to transfer to the defendant any supposed equitable title or interest which said town company might have had in said town lot. On 25th March 1874, said mayor conveyed the legal title to said lot to said town company; and on 5th November 1875 said town company, through its president, conveyed the legal title to said lot to the plaintiff; and from the evidence we think the plaintiff holds the legal title to the lot in trust for the defendant.

The judgment of the court below will be affirmed.

All the Justices concurring.